James Filiault, No. 184291
jfiliault@dubofflaw.com
The DuBoff Law Group, LLC
6665 SW Hampton Street, Suite 200
Portland, OR 97223-8357
Telephone: (503) 968-8111
Facsimile: (503) 968-7228
Attorneys for Defendant, The DuBoff Law Group, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>**LARRY FRAGA, aka LARRY FRAGA DESIGNS,**<br><br>Debtor. | Case No.: 00-44500<br>Adversary No.: 06-4005-LJT<br><br>Chapter 7 |
| **LARRY FRAGA,**<br><br>Plaintiff,<br><br>v.<br><br>**THE DUBOFF LAW GROUP, LLC, a limited liability company, WARREN GUBLER ATTORNEY AT LAW, and FRESNO COUNTY SUPERIOR COURT,**<br><br>Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
SANCTIONS PURSUANT TO RULE 11**

MEMO. IN SUPPORT OF MOTION       1
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

## I. STATEMENT OF ISSUES TO BE DECIDED

Plaintiff Larry Fraga's adversary complaint in this case contains allegations that are without factual support and claims that are not supported by Ninth Circuit law. The complaint apparently was designed solely to harass, to delay Defendant DuBoff Law Group's ("DLG") attempts to collect its judgment against Fraga, and to increase the costs of this litigation. The issue to be decided is whether Fraga and/or his counsel, Kristine Kelly, should be sanctioned by this Court for filing a complaint containing allegations made without evidentiary support, that are not warranted by existing law, and that are presented for an improper purpose.

## II. STATEMENT OF FACTS

On May 19, 2000, Plaintiff Larry Fraga entered into a representation agreement with the law firm DuBoff, Dorband, Cushing and King ("DDCK"), DLG's predecessor in interest. Declaration of James Filiault in Support of DLG's Motion for Rule 11 Sanctions ("Filiault Decl."), ¶ 2. On August 1, 2000, an involuntary chapter 7 case was commenced against Fraga, with the order for relief entered on September 6, 2000.

DLG and DDCK performed copyright-related services for Fraga beginning in May, 2000. *Id.* ¶ 3. Fraga paid for the services he received from DDCK, including services rendered post-petition. *Id.* ¶ 4. DLG continued performing legal services at Fraga's request until October, 2002. *Id.* ¶ 5. Each month, invoices were mailed to Fraga setting forth a description of the services performed and the amount due thereon. *Id.* ¶ 8. Fraga made partial payments to DLG in June and September, 2001. *Id.* ¶ 7. The amount remaining due and owing for the legal services incurred between August, 2001 and September, 2002 is $18,643.24, plus accrued pre-judgment interest of $6,372.38. *Id.* ¶¶ 7, 11.

DLG brought suit against Fraga in Oregon state court on October 11, 2002, alleging breach of contract, common count, account and other causes of action. Filiault Decl. ¶ 9. The complaint sought the $18,643.24 in unpaid fees, plus interest, attorneys fees and other relief. *Id.*

Case: 06-04005    Doc# 17    Filed: 03/03/06    Entered: 03/03/06 14:54:38    Page 2 of 11

Fraga was duly served with the complaint, but failed to respond to it. *Id.* ¶ 10. DLG then obtained entry of an order of default. *Id.*

After learning of the bankruptcy case, and in an abundance of caution, DLG moved to have the Oregon state court case abated. As a further precautionary measure, DLG filed a claim in this bankruptcy case for $18,643.24. *See* Claim No. 3, on file herein. The trustee, Tevis T. Thompson, Jr., objected to the claim on the ground that it represented a post-petition claim.[1] *See* Trustee's Objection to the Claim of The DuBoff Law Group, LLC, on file herein. The Trustee said that "the claim is based upon money owed to DuBoff for legal services rendered to Mr. Fraga, after the commencement of the case, during the period of time October 10, 2001, through November 10, 2002 . . . DuBoff did not have a claim against Debtor on or before entry of the order for relief in this case. Therefore, that claim must be denied in its entirety." Trustee's Objection, p. 2. Fraga did not object to the Trustee's determination that DLG's claim was post-petition. Fraga received a discharge on January 23, 2002.

DLG then returned to the Oregon court and simultaneously moved to have the case reinstated and for entry of default judgment. As a result, the court entered judgment against Fraga on March 16, 2005, in the amount of $35,001.72, which comprises $18,643.24 in principal, plus $6,372.38 in pre-judgment interest, $9,430 in attorney fees, $556.10 in costs, plus post-judgment interest. *Id.* ¶ 11. DLG then had its money judgment domesticated in California by the firm Gubler & Ide on August 12, 2005. *Id.* ¶ 12. When Fraga failed to appear at his debtor's examination, California Superior Court for the County of Fresno issued a bench warrant for his arrest.

In response to the bench warrant, Fraga filed a motion with the California court for stay of the enforcement of DLG's judgment and to recall the warrant for his arrest. *Id.* ¶ 13. Fraga alleged in his motion that the bankruptcy court maintained jurisdiction between the parties, and that the superior court could not enforce a judgment against him. *Id.* The superior court denied

---

[1] The trustee also made a "separate and further" objection on the ground that the claim was filed after the bar date.

MEMO. IN SUPPORT OF MOTION     3
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

the motion because the underlying debt was incurred post-petition, and therefore the automatic stay did not apply. *Id.* ¶ 14. The court further held that the Oregon action was commenced following Fraga's discharge, and therefore the stay had been lifted prior to the commencement of the Oregon action. *Id.* Finding that Fraga did not show good cause for failing to appear for his debtor's examination, the court awarded DLG's counsel its fees. *Id.* Despite the fact that this hearing was held and the court's ruling given prior to the filing of this adversary complaint, Ms. Kelly fails to mention the denial of her motion and the grounds therefore in the complaint.

### III. ARGUMENT

Rule 11 provides that a person signing a pleading is certifying to the court that to the best of the person's knowledge, information and belief, formed after a reasonable inquiry: (a) the pleading is not being presented for an improper purpose, such as to harass, cause unnecessary delay or needlessly increase the costs of litigation; (b) the claims in the pleading are warranted by existing law; and (c) the allegations and other factual contentions have evidentiary support. Fed. R. Civ. Proc. Rule 11(b).

This rule is designed to create an affirmative duty of investigation both as to law and as to facts, and thus deter frivolous actions and costly, meritless pleadings. *Business Guides, Inc. v. Chromatic Comm. Enter., Inc.*, 498 U.S. 533, 550, 111 S.Ct. 922, 929 (1991). Rule 11 violations are evaluated by an objective standard; if the paper filed is legally unreasonable or without factual foundation, even though not filed in subjective bad faith, it violates the rule. *Id.* The rule does not prohibit merely intentional conduct – inexperience and incompetence all contribute to a violation as well. *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987).

#### A. Controlling Ninth Circuit Precedent Clearly Bars Plaintiff's Claims.

Rule 11 is violated where it is "perfectly clear that a claim has absolutely no chance of success under the existing precedents and . . . no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway Constr. Corp. v. City of New York*, 762 F.2d

243, 254 (2nd Cir. 1985). Put another way, the standard is violated if no plausible, good faith argument can be made by a competent attorney to the contrary. *Business Guides, Inc.*, 498 U.S. at 550.

It is well-established in the Ninth Circuit that post-petition legal services, even when provided pursuant to a pre-petition contract, do not give the attorney a claim against the estate. In re *Hines,* 147 F.3d 1185, 1190-91 (9th Cir. 1998). Therefore, not only may the attorney/creditor not make a valid claim for those fees against the estate, but the automatic stay and discharge provisions of the Bankruptcy Code do not apply to the claim for unpaid fees as well. *Id.*; *see also* In re *Sanchez*, 241 F.3d 1148, 1150-51 (9th Cir. 2001) (holding that "[t]here is no question after *Hines* that a reasonable fee for post-petition services is not a dischargeable debt and may be collected in the course of the bankruptcy without violating the automatic stay.").

For instance, in In re *Tredinnick*, 264 B.R. 573 (9th Cir. BAP 2001), a paralegal and the debtor entered into a contract for the provision of legal fees one month prior to the debtor's filing of a chapter 7 petition. Beginning post-petition, the paralegal performed services for the debtor. *Id.* at 574. When the debtor failed to pay for the services, claiming that they were subject to his discharge because they arose out of a pre-petition contract, the paralegal sued. *Id.* at 575. The Ninth Circuit BAP held that the paralegal's "right to payment" arose post-petition, because the legal services that were performed for the debtor were performed post-petition. *Id.* at 575-76. The Ninth Circuit BAP held that the pre-petition contract had no effect; the dispositive question was the timing of the services performed. *Id.* at 578. Post-petition services in such a case equal post-petition debt, and the automatic stay and discharge provisions of the code have no effect on the claim. *Id.* at 577-78.

The law of the Ninth Circuit in this area has been well-settled since the *Hines* decision, almost eight years ago. Had Fraga's attorney done even cursory legal research in this area, she would have discovered that the law of the circuit provides that her client does not have a valid claim. Further, prior to the filing of the complaint in this case, Fresno County Superior Court

MEMO. IN SUPPORT OF MOTION     5
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

and this Court both informed Fraga that his argument had no merit. Thus, at the time the instant complaint was filed, Fraga's attorney knew that her client's case had no chance of success under existing precedent.

Further, there is no good faith basis to argue for an extension of existing law. In fact, Fraga and his counsel appear to take the head-in-the-sand approach, hoping that if they ignore the Ninth Circuit's clear precedent it will go away. Despite being advised by numerous courts that they were wrong in their legal assertions, and despite being informed repeatedly by the undersigned that they were wrong in their legal assertions, Fraga and his counsel have not even acknowledged the existence of the controlling precedent, never mind made a plausible argument why it does not apply or why it should be extended in this case. Existing case law could not be clearer; there is no objectionably reasonable basis for Fraga's claims in this case.

### B. Plaintiff's Claims Have no Evidentiary Support.

Fraga's mischaracterization of the plain facts in this case are scandalous. At least the statements in Fraga's complaint made at paragraphs 9, 13, 14 and 15 have no basis in fact. Worse, Fraga contorts the Declaration of Christopher W. Brown in Support of Motion for Default Judgment ("Brown Declaration"), filed in the Oregon state court case, and its attached exhibits in an effort to somehow manufacture claims that clearly do not exist. The statements at issue are as follows:

> 1. "The Declaration[of Christopher Brown] was based upon fees DUBOFF claims it incurred in pursuing FRAGA for pre-petition debts that had already been discharged." Compl. ¶ 9.

Fraga includes only some of the Exhibits to the Brown Declaration in support of his complaint. Tellingly, the portions that reveal the lack of support for his position are omitted. The Brown Declaration is clear as to what it alleges.

First, Brown Declaration asserts in paragraphs 7 and 8 that Fraga owes DLG $18,643.24, plus interest, for legal services performed by DLG on behalf of Fraga. Filiault Decl. ¶ 15 and

MEMO. IN SUPPORT OF MOTION 6
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

Exhibit 9. Attached to the Brown Declaration as exhibit 5 is a copy of a reminder notice, which sets forth the dates and invoice numbers of the bills at issue, which begin October 10, 2001 (more than a year after the petition date), and continuing until November 10, 2002. *Id.* The detail for these invoices, which were in Fraga's possession prior to his filing the instant complaint, further explain that these services arose in connection with copyright work done by DLG at his direction. A true and correct copy of the underlying narrative from the bills is attached as Exhibit 3 to the Filiault Decl.

Exhibit 7 to the Brown Declaration is the Oregon complaint, which further explains that the $18,643.24 in fees was incurred in connection with providing services to Fraga's business. Fraga did not submit exhibits 5 and 7 with his complaint.

Instead, Fraga points to an additional and separate invoice, which sets forth the additional $9,430 in fees that DLG was awarded for its costs of chasing Fraga to collect the underlying debt. Fraga's attorney then implies that this invoice represents the fees that are the subject of the main judgment, rather than the ancillary collection fees.

Viewing the substance of the Brown Declaration in its entirety, the facts are that DLG is entitled to a judgment for the $18,643.24 it incurred in post-petition copyright law services performed at Fraga's direction. There is not a single legal service described in the Brown Declaration that arose prior to the petition date in this case. It is further clear from the 14 invoices in Fraga's possession on the date he filed this Complaint that the $18,643.24 was not incurred in collecting a debt. In addition, it is clear from the Trustee's objection to DLG's claim and this Court's order thereon, from the ruling of the California state court, and from the controlling Ninth Circuit authority cited in part III.A, above, that DLG's claim was not discharged. There is no factual support for Fraga's claim that DLG's fees were incurred in pursuing a pre-petition, discharged debt.

MEMO. IN SUPPORT OF MOTION    7
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

Case: 06-04005   Doc# 17   Filed: 03/03/06   Entered: 03/03/06 14:54:38   Page 7 of 11

> 2. "It is clear by examining the attached Exhibits that DUBOFF asserted a claim in the Bankruptcy Court for pre-petition debt, incurred by way of the May, 2000 contract." Compl. ¶ 13.

As described above, the services upon which the judgment is based were incurred beginning over a year after the petition date in this case. Therefore, they are post-petition debts of Fraga. This Court and the Trustee in this case both stated as much in the Trustee's objection to DLG's claim and in the Court's Order granting the Trustee's motion to disallow the claim. The California state court further agreed that debts arising after the petition date are post-petition debt. Plaintiff has not, and cannot, point to a single transaction at issue in this case that arose prior to the petition date. Therefore, this allegation has no basis in fact.

> 3. "DuBoff fabricated the post-petition fees veiling the very debt it attempted to assert, but was denied, in Bankruptcy the [sic] Court, hoping to avoid statutory language and authority from the 9th Circuit." Compl. ¶ 14.

This statement alleges fraud on the part of DLG with absolutely no support in the record. The attachments to the Brown Declaration could not be any clearer. DLG sued Fraga for nonpayment of copyright law services performed on his behalf post-petition. Whether in the bills sent to Fraga prior to suing him, or in pleadings before the Oregon state court, this Court or the California state court, the exact description and nature of the services on which DLG based its claim have never changed. This statement further ignores and misconstrues controlling Ninth Circuit authority, as set forth in part III.A., above. There is absolutely no factual basis for this allegation of fraud.

> 4. "All of the alleged post-petition fees sought by DUBOFF are for costs incurred by DUBOFF in tracking the status of FRAGA's bankruptcy case and DUBOFF's costs in preparing its lawsuit for the claim herein. None of the entries and fees associated therewith arose from any work done at FRAGA's

request. It was purely for DUBOFF's financial gain to pursue FRAGA on a pre-petition debt." Compl. ¶ 15.

This allegation completely ignores the substance of the Brown Declaration and its supporting documents. For instance, it ignores the allegations contained in the Oregon state court case, which describe the nature of the services. It ignores the billing summary attached as exhibit 5 to the Brown Declaration, which references the invoices for the post-petition copyright services performed on behalf of Fraga. It ignores the invoices in Fraga's possession which set forth in detail the narrative of the copyright services performed on his behalf. It ignores exhibit 8 to the Brown Declaration, which sets forth the completely separate fees charged in attempting to collect the copyright fees. And it ignores the narrative contained in paragraphs 7, 8, 9 and 10 of the Brown Declaration, that explain the various relevant exhibits.

Further, this allegation ignores the explicit rulings of this Court, and the California state court, and the implicit ruling of the Oregon state court, all of which found that the $18,643.24 in fees sought by DLG were post-petition fees incurred in connection with providing legal services to Fraga. It further ignores controlling Ninth Circuit authority, as set forth in part III.A, above. In short, there is no evidence whatsoever to support the allegations that all of the fees sought by DLG are for tracking the Fraga bankruptcy, for suing to collect fees, and that none of the fees arose from work done at Fraga's request. This allegation is a pure fabrication on the part of Fraga.

### C. This Case was Filed for an Improper Purpose.

The complaint in this case not only lacks a factual or legal basis, but it is the fourth time Fraga has tried to get out of paying DLG's fees. "There comes a point when successive motions and papers become so harassing and vexatious that they justify sanctions even if they are not totally frivolous . . . . The cumulative effect of the defendant's litigation tactics indicate that the motion was filed for an improper purpose." *Aetna Life Ins. Co. v. Alla Medical Svcs. Inc.*, 855 F.2d 1470, 1477 (9th Cir. 1988); *see also Maciosek v. Blue Cross and Blue Shield*, 930 F.2d 536,

MEMO. IN SUPPORT OF MOTION 9
FOR RULE 11 SANCTIONS

542 (7th Cir. 1991) (holding Rule 11 sanctions can be awarded when a party asserts the same or similar claims in lawsuits raising claims previously decided in other cases); *Bethesda Lutheran Homes & Svcs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir. 2001) (holding claim barred by res judicata as a result of prior suits on the same claim is "wholly improper.").

After repeated attempts to collect its fees, which included numerous letters sent to Plaintiff, DLG was forced to file the complaint in Oregon state court for breach of contract and related causes of action. Fraga chose not to answer the complaint, nor deny its allegations, and a default was entered against him. Ultimately, the Oregon state court entered judgment against Fraga for the amount of DLG's fees plus the costs of collection. DLG asserted its claim for unpaid fees in this bankruptcy case, but the claim was objected to by the Trustee on the grounds that the fees were incurred post-petition. Fraga did not oppose the Trustee's objection. This Court then issued an order disallowing DLG's claims based on the Trustee's objection. Fraga next tried to avoid his responsibility to pay the judgment by filing a motion in California state court to recall the warrant that was issued for his arrest following his failure to appear at a debtor examination. Fraga argued to the California state court that the fees DLG was collecting were subject to his discharge and were barred by the automatic stay. The California state court rejected this argument, and held that the fees were post-petition fees not subject to the discharge or automatic stay. Undaunted, Fraga comes now for a fourth bite at the apple. At some point, enough is enough.

Given that Ninth Circuit law is clear at this point, given Plaintiff's attempts to distort, omit and misstate the facts, and given the vast procedural history in this case, there can be no other conclusion but that this complaint is brought solely as a tactical measure to further frustrate DLG's collection efforts. As such, it violates Rule 11 and sanctions are appropriate.

MEMO. IN SUPPORT OF MOTION        10
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

Case: 06-04005   Doc# 17   Filed: 03/03/06   Entered: 03/03/06 14:54:38   Page 10 of 11

## IV. CONCLUSION

For the forgoing reasons, DLG asks that the court sanction Plaintiff Fraga and his counsel in an amount sufficient to discourage this type of behavior in the future, that DLG be awarded its attorneys fees and costs associated with bringing this motion, and that as a further sanction the adversary complaint be dismissed with prejudice.

DATED this 30th day of January, 2006.

THE DUBOFF LAW GROUP, LLC

*[signature]*

James Filiault, No. #184291
6665 SW Hampton Street, Suite 200
Portland, OR 97223
(503) 968-8111
jfiliault@dubofflaw.com
Of Attorneys for Plaintiff DuBoff Law Group, LLC

MEMO. IN SUPPORT OF MOTION     11
FOR RULE 11 SANCTIONS
\\Jelad\Clients\2600-2699\2665\Pleadings\memo iso Rule 11 motion.doc

Case: 06-04005   Doc# 17   Filed: 03/03/06   Entered: 03/03/06 14:54:38   Page 11 of 11